IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD WEST,<br>            *Petitioner*,<br><br>    v.<br><br>JAMEY LUTHER, et al.,<br>            *Respondents*. | CIVIL ACTION<br>NO. 20-740 |

**PAPPERT, J.**                                                                                                                                                                                                                                                                                               **October 12, 2021**

<u>**MEMORANDUM**</u>

      Petitioner Leonard West seeks habeas relief under 28 U.S.C. § 2254. Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation recommending West be granted a new trial based on his claim that his trial counsel was ineffective for not investigating and presenting alibi testimony. (ECF 15 at 9-12.) She also concluded his second claim was procedurally defaulted. (*Id.* at 13.) Respondents (ECF 22) and West (ECF 18) filed objections to the R&R. After thoroughly reviewing the state court record, Judge Wells's R&R and the parties' objections, the Court overrules West's pro se objections and sustains respondents'. The portion of the R&R which grants habeas relief is not adopted and West's petition is denied.

I

A

      West was convicted of attempted murder, aggravated assault and related firearms offenses following a jury trial in the Philadelphia County Court of Common Pleas. The shooting victim, now confined to a wheelchair, testified he and West had grown up together and had been friends "living a block apart." *Commonwealth v. West*, No. 3823 EDA 2017, 2019 WL 2027222, at *1 (Pa. Super. Ct. May 8, 2019) (quoting May

16, 2011 Trial Ct. Op. at 4-5). On the night of the shooting, he greeted West while walking near the intersection of Hemberger and Mifflin Streets in Philadelphia and, when they were four to six feet apart, he saw West "reaching behind his back with his right arm . . . ." (*Id.*) The victim "turned to his right, two shots hit him in the chest and a third shot hit him in the mouth . . . ." (*Id.*) He fell to the ground, was shot in the thigh and twice more in the right shoulder." (*Id.*) The victim did not see a gun but said he "knew what was coming next" when West "stuck his right hand behind his back" and testified the shots came from where West was standing directly in front of him. (*Id.*) On his way to the hospital, the victim told a detective the assailant was West, using his nickname "Twin."[1] (*Id.*)

West was sentenced to an aggregate term of thirty-three and one half to sixty-seven years in prison. The Pennsylvania Superior Court affirmed the judgment of sentence, *Commonwealth v. West*, 40 A.3d 206 (Pa. Super. Ct. 2011) (Table), and the Pennsylvania Supreme Court denied his petition for allowance of appeal. *Commonwealth v. West*, 48 A.3d 1249 (Pa. 2012) (Table).

B

West filed a timely *pro se* Pennsylvania Post Conviction Relief Act petition. After he was appointed appellate counsel, he filed an amended PCRA petition in which he argued, among other things, that his trial counsel was ineffective for failing to call Benita Dixon as an alibi witness. *West*, 2019 WL 2027222, at *2. In an exhibit attached to his counseled amended petition, West explained that his trial "counsel said that it will not be a wise choice for [Dixon] to testify for me at trial. Because the jury is

---

[1] West had a twin brother, Leon, who was in federal custody at the time of the shooting. (N.T. 11/24/2010 (Trial) at 147:17-25; N.T. 11/24/2010 (Trial) at 56:19-57:6.)

2

going to believe that [Dixon] will defend her boyfriend for all purpose[s]." (Respondents' Obj., Ex. A (Amended PCRA Pet'n), ECF 22-1 at ECF p. 21.) West, Dixon and Constance Clarke, West's trial counsel, then testified at an evidentiary hearing limited to this claim. *West*, 2019 WL 2027222, at *6.

At the hearing, West said he told his Clarke he was at Dixon's during the shooting. (N.T. 11/9/2017 (PCRA Hearing) at 10.) He identified Dixon as his girlfriend and said she would have testified that he was at her home six to seven blocks from the intersection of Hemberger and Mifflin when the victim was shot. (*Id.* at 10-12, 16.) According to West, he knew he was with Dixon because the shooting "had happened on a Saturday" when he "usually" went out with his girlfriend. (*Id.* at 18.) Then he said although they usually shot pool on Saturdays, that night Dixon's "daughter came past and dropped [her] kids off so [Dixon] could babysit." (*Id.* at 12.) Even though he saw Dixon's daughter, he did not tell his trial counsel she had seen him when she dropped off her children on the night of the crime. (*Id.* at 12-13.)

Dixon testified that she was West's girlfriend and he had been at her house during the shooting. (*Id.* at 20-21.) She maintained she knew he was there because she played "pool every Saturday" in a league and West "was always with [her] at the pool games and every Saturday [they] would have a game somewhere . . . ." (*Id.* at 21, 24.) Nevertheless, she did not say she had a game on the night of the shooting. Instead, she fed her daughter's children while West "was sitting in there with them" and after she put them to bed, she and West "stayed up in [her room] watching TV, watching movies." (*Id.* at 21.) According to Dixon, West's attorney never contacted her after his arrest. (*Id.* at 22.) Dixon thought she "left [his lawyer] a couple messages but [Dixon] never

received a response." (*Id.* at 22.)

West's trial counsel Clarke was an Assistant Defender with the Defender Association of Philadelphia with twenty years of experience, mostly as a criminal defense attorney. (*Id.* at 11, 28, 35.) She testified that West's file included a "pink sheet" showing he had identified Dixon as an alibi witness to the first attorney who met with him at the Defender Association. (*Id.* at 30.) An investigator was assigned to interview Dixon but did not actually do so. (*Id.*) Clarke testified that she "didn't know" the investigator had never talked to Dixon or that he "was suffering from Alzheimer's." (*Id.*) She explained that she "took his word," although she "should have investigated [Dixon her]self, not relied on an investigator." (*Id.*) In Clarke's recollection, West never told her Dixon would not appear. (*Id.* at 35.) She could not remember if Dixon left her messages that she had not returned, but said it was "possible." (*Id.* at 31.)

Before the trial, Clarke met with West to prepare and discuss a defense strategy, including whether to present alibi testimony. (*Id.* at 32-33.) They had "numerous discussions about what the best possible strategy was for the case" and "numerous theories . . . went back and forth." (*Id.* at 33-34.) West "was going to plead and then [they] were going to bring the alibi witness in, then [they] weren't going to." (*Id.* at 34.) Even though Clarke did not know the investigator had not contacted Dixon, she "had concerns about . . . what could happen with an alibi witness." (*Id.* at 34.) Ultimately, Clarke intended to defend West through evidence the victim had been selling drugs for "everybody," including an Asian gang that was "after him," but "a bulk of the defense did not get presented . . . ." (*Id.* at 31, 33.) She expressed regret at not having Dixon's testimony "as backup," (*Id.* at 30) and agreed that in hindsight, her decision to reject

4

the alibi defense was not correct. (*Id.* at 34-35.) But, she explained, by the time of trial "it was too late," because the Pennsylvania Rules of Criminal Procedure require advance notice of an alibi witness. (*Id.* at 32.) Clarke recalled speaking "to the district attorney about" Dixon, but he "was going to object" and the alibi testimony would not be admitted with the DA's objection. (*Id.*)

C

At the conclusion of the evidentiary hearing, the PCRA court found Clarke's testimony "defie[d] common sense" and was not credible. (*Id.* at 43.) The judge felt that in a case that sat for years between a defendant's arrest and trial, an attorney who had an alibi notice but no indication that the witness was contacted would, "of course" say to their client "hey, my investigator can't find your girlfriend, where is your girlfriend[?]" He concluded Clarke's testimony evidenced "her regret that she didn't hit [West] over the head and convince him to take the 7 1/2 to 15 [year] plea and instead went to trial thinking she had the Asian [gang] defense or some other defense and she was wrong." (*Id.* at 44.) At the end of the day, however, the court determined Clarke made a "strategy call" in not pursuing Dixon's alibi testimony, something lawyers do "all the time," and denied West's petition. (*Id.* at 44, 48.)

In a subsequent opinion further explaining the denial, the PCRA court reasoned that Clarke decided not to call Dixon, "[i]n light of the victim's positive identification of [West] as the shooter . . . after numerous discussions with [West] and balancing the risks and benefits of calling [Dixon] as an alibi witness." (Respondents' Obj., Ex. B (PCRA Ct. Op.), ECF 22-1 at 8 (ECF p. 30).) The court held it was "clear from the record that Ms. Clark[e]'s decision not to call Ms. Dixon as an alibi witness resulted

5

from a reasonable trial strategy" and it was not a strategy chosen "because of any short coming [sic] of her office's investigator." (*Id.*)  Further, it determined West had not established "that he was in fact prejudiced by Ms. Clark[e]'s trial strategy." (*Id.* at 9 (ECF p. 31).)

D

The Superior Court affirmed the PCRA court's denial, finding West's claim regarding Ms. Dixon meritless and his remaining claims waived. *West*, 2019 WL 2027222, at *1, 6-7.  The court explained the PCRA court's credibility and factual determinations bound its decision because they were "supported by the record." *Id.* at *6.  It held that the PCRA court's conclusion that West's counsel's decision not to call Ms. Dixon as an alibi witness [ ] was reasonable in light of the Victim's positive and unequivocal identification of [West], his longtime friend, as the shooter" and was supported by the record and consistent with law. *Id.* at *6 (internal quotation omitted). West did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

E

West then filed a second *pro se* PCRA petition on June 17, 2019, arguing that the Superior Court erred in affirming the denial of his initial petition.  (*See* ECF 14 at 3 n.2; ECF 20 at ¶ 7.)  Court-appointed counsel filed an amended second PCRA petition in state court on October 24, 2019.  (ECF 20 at ¶ 8.)  On March 5, 2020, the PCRA court denied West's second petition as untimely.  (*See* ECF 20, ¶ 9.)  The Superior Court affirmed the denial of West's second PCRA petition on December 29, 2020 and West did not petition the Pennsylvania Supreme Court for allowance of appeal.  (*Id.* ¶¶ 10, 11.)

6

F

In February 2020, before West's second PCRA petition was decided, he filed a *pro se* petition for federal habeas relief. (Pet'n, ECF 1.) He claims his trial counsel was ineffective for: (1) failing to investigate and present Dixon as an alibi witness; and (2) failing to raise a due process objection to a jury instruction that allowed the jury to convict him based solely upon the victim's uncorroborated testimony. (*Id.* at 5-7.) Respondents argue: (1) the state courts reasonably rejected West's alibi-based ineffectiveness claim; and (2) West's second claim was procedurally defaulted and meritless because "the uncorroborated testimony of a single witness may be sufficient to sustain a conviction." (Pet'rs. Resp., ECF 14.)

West's habeas petition was referred to Judge Wells for an R&R (ECF 5) and on March 11, 2020, shortly before courts suspended in-person operations due to the COVID-19 pandemic, she ordered the Clerk of the Quarter Sessions Court of Philadelphia County to file copies of all records in West's state court proceedings with the Clerk of this Court within thirty days. (ECF 6.) According to the docket, however, no state court records were transmitted.

On January 12, 2021, without the benefit of the full state court record (particularly the transcript from the PCRA evidentiary hearing), Judge Wells issued her R&R, recommending West be granted a new trial based on his claim regarding the absence of Dixon's alibi testimony, finding "Clarke had no reasonable excuse for failing to call [her] as a witness." (ECF 15 at 11.) Judge Wells also recommends denying West's claim that his trial counsel was ineffective for not objecting to a trial court instruction that the victim's testimony did not need to be supported by other evidence

7

to sustain a conviction because the claim was not raised on direct appeal or in West's PCRA proceedings and is unexhausted. (*Id.* at 5.)

G

On January 28, West filed an objection to the R&R's recommendation to deny his second claim. (ECF 18.) On March 22, the Commonwealth filed an objection to the R&R's recommendation to grant habeas relief based on West's first claim. (ECF 22.) On June 24, the Court ordered the Clerk of the Quarter Sessions Court of Philadelphia County to file copies of all records in the matter of *Commonwealth v. West*, CP-51-CR-0011936-2009 with the Clerk of this Court by July 23. (ECF 26.) The Court received a portion of the State Court record on August 18 (ECF 29) and has since requested and received copies of the 2010 trial transcript and the PCRA court's November 9, 2017 evidentiary hearing transcript.

II

The Court reviews de novo the specific portions of the R&R to which the parties object and "may accept, reject, or modify" Judge Wells' conclusions "in whole or in part." 28 U.S.C. § 636(b)(1)(c); *see also* Fed. R. Civ. P. 72(b)(3).

A

Respondents object to the R&R's determination that relief is warranted on West's first claim and its conclusion that West has shown his trial counsel was ineffective for not presenting Dixon's alibi testimony. (ECF 22 at 1.) This claim raises the same issue West raised when he appealed the PCRA court's denial of his PCRA petition to the Superior Court.

1

28 U.S.C. § 2254 permits the Court to grant habeas relief only if (1) the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the" United States Supreme Court; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"'Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.'" *Dellavecchia v. Sec'y Pa. Dep't of Corrs.*, 819 F.3d 682, 692 (3d Cir. 2016) (alteration in original) (quoting *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000)); *see* 28 U.S.C. § 2254(e)(1). The petitioner must show the state court's factual determination was "objectively unreasonable in light of the evidence presented in the state court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). Rather, Section 2254(d)(2) requires "substantial deference" to the state trial court. *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). "Even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.'" *Wood*, 558 U.S. at 301 (citation, internal quotations and alterations omitted). However, "'deference does not imply abandonment or abdication of judicial review,'" and "'does not by definition preclude relief.'"

*Brumfield*, 576 U.S. at 314 (quoting *Miller-El*, 537 U.S. at 340).

2

*Strickland v. Washington* also governs West's ineffective assistance of counsel claim. 466 U.S. 668, 669 (1984). To succeed, he must show (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness" and (2) he "suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687). "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland*, 466 U.S. at 698.

With respect to counsel's performance, there is a "strong presumption" it was not deficient. *Id*. at 689. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Whether counsel's representation was reasonable must be determined based on the particular facts of West's case viewed as of the time of the challenged conduct. *Id*. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690. Defense counsel is not required "to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Counsel cannot be ineffective for failing to pursue a meritless claim. *See United States v. Bui*, 795 F.3d 363, 366–67 (3d Cir. 2015) ("'[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'") (quoting *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

To establish prejudice, West must demonstrate "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). West must show "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The Court must consider the totality of the evidence. *Id.* at 695.

West's claim cannot proceed if he fails to demonstrate either prong. *See Strickland*, 466 U.S. at 697. "[I]f a fairminded jurist could agree with either [the state court's] deficiency or prejudice holding, the reasonableness of the other is beside the point." *Shinn v. Kayer*, --- U.S. ----, 141 S. Ct. 517, 524, 208 L. Ed. 2d 353 (2020).

3

The state court's decision regarding the merits of West's alibi witness ineffectiveness claim required more deference than the R&R gives it. First of all, the Magistrate Judge lacked the complete state court record. Secondly, because the state court already rejected this claim, it is subject to "doubly" deferential review, so as "to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citation and internal quotation omitted). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington*, 562 U.S. at 105 (citations omitted).

11

i

The R&R rejects the Superior Court's findings of fact regarding trial counsel's performance as "unsupported by record evidence" and "unreasonable under § 2254(d)(2), concluding the Superior Court determined Clarke decided not to present alibi evidence "based upon comparing the benefit of Dixon's testimony to the victim's testimony . . . ." (ECF 15 at 10-11.) The Magistrate Judge maintains Clarke "had no basis to determine that Dixon would not be believed as compared to the victim" when she never interviewed Dixon. (*Id.* at 11.) As a result, the R&R applies *de novo* review to West's first claim and finds "trial counsel's performance was deficient" and *Strickland's* first prong satisfied because "Clarke had no reasonable excuse for failing to call Dixon as a witness" and, when she failed to do so, trial counsel "prevented Petitioner from having any evidence-based opportunity to be acquitted." (*Id.*) The R&R concludes that "[f]ailing to present a viable defense[ ] when there is otherwise, no defense, does not constitute reasonable conduct." (*Id.*)

The transcript of the PCRA evidentiary hearing undercuts the R&R's reasoning. It shows why the PCRA court, notwithstanding its questions regarding Clarke's believability, still determined her trial strategy was reasonable. Moreover, even if there was a "strong case for relief," it would "not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102 (2011). In applying *de novo* review to West's first claim, the R&R reweighs evidence under a "de-novo-masquerading-as-deference approach," when the question to be asked on habeas review is "whether a fairminded jurist could reach a different conclusion." *Shinn*, --- U.S. ----, 141 S. Ct. at 522 and 524. While there is evidence Clarke could have done more to

investigate whether Dixon was a viable alibi witness, the appropriate question "is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105 (2011). There is a reasonable argument Clarke did so.

The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. At the time of trial, Clarke believed West had "a really strong defense based on the evidence they had," although she was ultimately not permitted to pursue questions about whether the victim had been selling drugs for a gang that was "after him." (N.T. 11/9/2017 (PCRA Hearing) at 33-35.) While she was unable to elicit testimony from the victim that he was the target of a gang, the jury nevertheless heard that he had a prior arrest for having drugs and was shot in a neighborhood with frequent shootings where a specific gang sold drugs. (N.T. 11/23/2010 (Trial) at 104-05, 115, 169-70, 234, 237-38.)

The only "tactical reason" counsel needs to have before recommending not to pursue a weak claim is "a reasonable appraisal of [the] claim's dismal prospects for success . . . ." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Although neither Clarke nor her investigator met with Dixon prior to the trial, the testimony at the PCRA evidentiary hearing showed Clarke knew before trial that Dixon was available as a possible alibi defense and Clarke and West had discussed the possibility of using her testimony. (N.T. 11/9/2017 (PCRA Hearing) at 33-34.) Clarke's decision not to call Dixon was not because her investigator had not contacted Dixon but was instead due to her "concerns" about what could happen with an alibi witness. (*Id.*) Given Dixon's

13

relationship with West, it was not unreasonable for the state courts to credit Clarke's concerns about Dixon's potential as an alibi witness. *Cf. Romero v. Tansy*, 46 F.3d 1024, 1030 (10th Cir. 1995) ("[A]libi testimony by a defendant's family members is of significantly less exculpatory value than the testimony of an objective witness.").

The PCRA court considered Clarke's testimony and found her hindsight regret about an alternative defense she had not pursued "not sufficient" to support a finding that her trial strategy rose to the level of ineffective assistance of counsel. (Respondents' Obj., Ex. B (PCRA Ct. Op.), ECF 22-1 at 8-9 (ECF p. 30-31).) Faced with the same facts, the Superior Court held "the PCRA court's ultimate conclusion that Attorney Clarke's trial strategy – and her decision not to call Ms. Dixon as an alibi witness – was reasonable in light of the Victim's 'positive and unequivocal' identification of [West], his longtime friend, as the shooter," and it rejected West's ineffective assistance claim. *West*, 2019 WL 2027222, at *6. The state court conclusions regarding counsel's effectiveness are not beyond the realm of fairminded disagreement, which "precludes federal habeas relief under [Section 2254's] deferential standard." *Klein v. Superintendent Smithfield SCI*, 844 F. App'x 531, 536 (3d Cir. 2021) (citation and internal quotation omitted). *Cf. Figueroa v. Mooney*, No. 14-2876, 2016 WL 4975211, at *8 (E.D. Pa. Aug. 18, 2016) (holding a petitioner's ineffective assistance claim based on the failure to call an alibi witness did not "meet the doubly deferential standard"), report and recommendation adopted, 2016 WL 4943560 (E.D. Pa. Sept. 15, 2016).

ii

Because Respondents also object to the R&R's prejudice determination (ECF 22

14

at 12-15), the Court reviews the resolution of the second Strickland prong. *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made.") The Superior Court did not consider *Strickland's* prejudice prong, so the R&R looks to the PCRA court' s decision. (ECF 15 at 12, n.6.) *See Wilson v. Sellers* --- U.S. ----, 138 S. Ct. 1188, 1189, (2018) (holding "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale"). The R&R explains the PCRA court determined West "was not prejudiced by the omission of Dixon's alibi testimony, because it perceived harmful effects from the testimony." (ECF 15 at 11-12.) In the Magistrate Judge's view, the PCRA court's decision was "unsupported and unreasonable" because it did not identify what any harmful effects might have been. (*Id.* at 12.) Accordingly, the R&R applies *de novo* review and concludes West was prejudiced by the failure to present Dixon's testimony. (*Id.*) It explains that if Dixon had testified that West was in her home at the time of the shooting, "there is a reasonable probability, which is less than a preponderance, that a reasonable jury would have believed Dixon and acquitted [West] of inexplicably shooting his childhood friend." (*Id.*)

  Here again, the R&R does not appropriately defer to the state court's determination. On habeas review, the question is whether "the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn*, --- U.S. ----, 141 S. Ct. at 523 (quoting *Harrington*, 562 U.S. at 103.) West has not met this standard, which Congress meant to be "difficult to meet." *Harrington*, 562 U.S. at 102.

15

During the evidentiary hearing, the Commonwealth asked Clarke whether testimony from an alibi witness who is a very close associate (like a long-time girlfriend) "is weak evidence" that jurors would view "with the knowledge that there is a strong potential for bias." (N.T. 11/9/2017 (PCRA Hearing) at 39.) Clarke responded that "[i]t depends on the witness," and, although she previously had acknowledged having "concerns. . . about what could happen with an alibi witness," she said it was not why Dixon had not testified. (*Id.* at 34 and 39.) As respondents argue, the PCRA court then noted that Dixon's testimony could have a potential harmful effect. (ECF 22 at 12-13.) The court explained that presenting an alibi witness . . .

> . . . can be a negative. If the DA makes an argument to the jury, you heard the testimony of an alibi witness that you know is false, you know from looking at the other evidence it's false, you can ask yourself, why would an innocent man put a liar on the stand as a defense? An innocent man's defense is the truth. If you find that the alibi witness lied and it's his alibi witness, she didn't get up there by herself, she didn't wander into this courtroom, she was put on the stand by him, is that the act of an innocent man? It can be a negative, not just an ineffective neutral piece of evidence.

(N.T. 11/9/2017 (PCRA Hearing) at 42-43.) Next, the court said Clarke's testimony had not been credible, it was "overwhelmed" by her "lack of candor" and it "defied common sense" that Clarke would not have pursued a viable alibi defense. (*Id.* at 43-44.) The PCRA court's subsequent written opinion nonetheless explained that Clarke's decision not to call Dixon as an alibi witness was a "reasonable trial strategy" after her "numerous discussions with [West] and balancing the risks and benefits of calling Ms. Dixon . . . ." (Respondents' Obj., Ex. B (PCRA Ct. Op.), ECF 22-1 at 8 (ECF p. 30).)

Perhaps more importantly, the state court found there was no prejudice after hearing Dixon's putative alibi testimony at the PCRA hearing – testimony which relied largely on her recollection of what she and West usually did on Saturdays. (N.T.

16

11/9/2017 (PCRA Hearing) at 21, 24.) The R&R does not withstand scrutiny of the evidentiary hearing's transcript. Giving the state court "a deference and latitude that are not in operation when the case involves review under [*Strickland* alone]," there was ample basis for it to find any real possibility of West being acquitted as a result of Dixon's alibi testimony was outweighed by other evidence, including the identification testimony of the victim, his longtime friend. *Harrington*, 562 U.S. at 101. *Cf. Suero v. Kauffman*, No. 19-1653, 2021 WL 3353974, at \* (E.D. Pa. Jun. 30, 2021) (recommending denial of habeas relief based on the failure to present alibi testimony where the PCRA court determined trial counsel made a reasonable tactical decision not to present an alibi that "appeared largely based upon what [the witness] recalled that he and [Petitioner] did on a routine basis rather than a specific recollection of the night on which the [crime] occurred"), report and recommendation adopted, 2021 WL 3290601 (E.D. Pa. Aug. 2, 2021).

A fairminded jurist could reasonably conclude that further investigation of Dixon and presentation of Dixon's potential alibi testimony was not substantially likely to change the outcome of West's trial. West has not shown "an extreme malfunction in the state criminal justice system" which would allow the state court's prejudice determination to be disturbed. *Shinn*, --- U.S. ----, 141 S. Ct. at 526 (citation and internal quotation and alterations omitted).

B

West objects to Judge Wells' recommendation to deny his second claim. (ECF 18.) The claim asserts trial counsel's ineffectiveness for not raising a due process challenge to an instruction which, West argues, allowed the jury to convict him based

only upon the victim's uncorroborated testimony. (ECF 14 at 8-9.) Judge Wells correctly concludes the claim is unexhausted because it was not raised on direct appeal or in West's PCRA appeal and that any attempt to exhaust the claim through a subsequent PCRA petition would be dismissed as untimely. (ECF 15 at 5.)

Habeas petitioners must exhaust state remedies before seeking relief in federal court. *See* 28 U.S.C. § 2254(b)(1)(A). Exhaustion ensures state courts have the first opportunity to review federal constitutional challenges to state convictions. *See Davila v. Davis*, 137 S. Ct. 2058, 2064, 198 L. Ed. 2d 603 (2017) ("The exhaustion requirement is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation.") (citation, internal quotations and alteration omitted). West must show his claim has been "fairly presented to the state courts." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). This means he presented his federal claims at each level of the state's established appellate review process, *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002), and did so in such a way that the state courts had notice he was asserting a federal claim. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Moreover, federal courts should "not review federal claims that were procedurally defaulted in state court – that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, --- U.S. ----, 137 S. Ct. 2058, 2064, 198 L.Ed.2d 603 (2017). This rule gives way only if West "can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015) (citation and internal quotation marks

omitted). To show prejudice, West must prove "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Werts*, 228 F.3d at 193. To establish cause, he must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[2] *Id.* The fundamental miscarriage of justice exception "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

West's state court filings did not include his claim raising an alleged due process violation based on Clarke's failure to object to an instruction that allowed the jury to convict him based solely upon the victim's uncorroborated testimony. He has not presented any argument as to cause for his procedural default or actual prejudice. Nor has he set forth any new evidence that would make it more likely than not that no reasonable juror would have convicted him. His objection is overruled.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

---

[2] In very limited circumstances not applicable here, a petitioner can rely on post-conviction counsel's ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).